UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Craig Steffen,

      Plaintiff,

v.                                                                          Case No. 09-C-0120

Patrick R. Donahoe, Postmaster General,
United States Postal Service,

      Defendant.

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I. PRELIMINARY STATEMENT

Plaintiff Craig Steffen was discharged because he was unable to comply with a Prearbitration Settlement Agreement which required that he be able to return to work without any medical restrictions. The person who drafted the Settlement Agreement was USPS Labor Relations Specialist Emma Hughes, who believed at the time that she drafted the agreement that Steffen had a disability due to an off-the-job injury. She incorporated the requirement that Steffen's physician certify that Steffen could return to "full duty" into that settlement agreement, despite her knowledge that Steffen was disabled. She meant the term "full duty" to mean that Steffen could perform his job without medical restrictions of any kind.

A requirement that an employee will only be allowed to return to work if he has no medical restrictions is to condition the employee's performance on whether he is "100% healed."

1

Such a condition is a *per se* violation of the Americans with Disabilities Act and the Rehabilitation Act.

## II. FACTS

An overview of the facts is contained in the preliminary statement, above. The stipulated facts are contained in the Joint Proposed Findings of Fact (JPFF). Plaintiff's Objections to Defendant's Proposed Findings of Fact (PODPFF) and the Plaintiff's Proposed Findings of Fact (PPFF) contain the citations to the record which show that Defendants' allegations are irrelevant, incomplete or wrong and, thus, sometimes untruthful.

## III. PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED TO STEFFEN AND AGAINST THE DEFENDANT USPS[1] BECAUSE THE USPS HAS ENGAGED IN A *PER SE* VIOLATION OF THE LAW.[2]

### A. THE REQUIREMENT THAT STEFFEN BE ABLE TO PERFORM HIS WORK WITHOUT ACCOMMODATIONS IS A REQUIREMENT THAT HE BE "100% HEALED," AND THUS IS A *PER SE* VIOLATION OF THE ACT.

Steffen was discharged because his disability prevented him from returning to work without restrictions, a condition of the Pre-Arbitration Settlement Agreement drafted by Emma Hughes. The cause and effect relationship between his disability and his discharge could not be clearer.

At the time Hughes drafted the Settlement Agreement, she understood that if an employee sustained a disability while on the job, the USPS was required to provide accommodations for the individual with the disability. PPFF 1; Hughes Tr. 13. However, she also believed that even if the USPS was otherwise required to provide accommodations for individuals with disabilities that were not job-related, that by signing the agreement with the

---

[1] The nominal Defendant is Postmaster General Patrick Donahoe, but the actual employer was the United States Postal Service. Therefore, the Defendant will be referred to as the "USPS," rather than as Mr. Donahoe.

[2] General principles regarding parties' duties at summary judgment were reviewed by the USPS in its brief and expanded upon by Steffen in this brief at Sections IV A. and B., below; those principles will not be reviewed here.

2

union meant that the USPS no longer had that obligation, at least as applied to Steffen. PPFF 2; Hughes Tr. 13-14. This is simply not true, as a matter of law.

An employer may not absolve itself of its obligation to provide reasonable accommodations to a returning employee by requiring the employee to be "100% healed;" such a requirement is a *per se* violation of Americans with Disabilities Act and, by virtue of the identical language in the Acts requiring individuals with disabilities to be provided reasonable accommodations, the Rehabilitation Act, as well. See *Hendricks-Robinson, et al. v. Excel Corporation,* 154 F.3d 685 (7th Cir. 1998) (general "physical fitness" requirements violate the ADA because they have the capacity to screen out disabled employees and therefore have the possibility of violating the ADA's requirement of an individualized assessment of an employee's capabilities); see also *Heise v. Genuine Parts Co.,* 900 F. Supp. 1137, 1154 n. 10 (D. Minn. 1995) (a "must be cured" or "100% healed" policy is a "per se violation of the ADA as such a policy does not allow for a case-by-case assessment of an individual's ability to perform the essential functions of the individual's job, with or without an accommodation.") *citing to Hutchinson v. United Parcel Serv., Inc.,* 833 F. Supp. 379 (N.D. Iowa 1995) (same). Indeed, such an attempt to obviate the need to determine whether an individual with a disability can perform his job with or without accommodations would ignore the Act's requirement that the employer and the employee engage in an interactive process to determine what accommodations could be provided that would allow the employee to perform the essential functions of the job and meet the employer's need for such accommodations to be reasonable; "Neither the employee nor the employer may unilaterally determine what constitutes a reasonable accommodation under the act." *Sturz v. Wisconsin Dept. of Corrections,* 642 F.Supp.2d 881, 887 (W.D. Wis. 2009), citing *Hendricks-Robinson* at 693.

3

Furthermore, the "100% healed" requirement in the Settlement Agreement constituted a prospective waiver of Steffen's right to accommodation for his disability, which is also a *per se* violation of the law related to discrimination claims, of all kinds; prospective waivers of rights under civil rights laws are unenforceable. See *Richardson v. Sugg,* 448 F.3d 1046, 1053-54 (8th Cir. 2006), citing *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) and collecting cases. See also *Bell v. Secretary of Agriculture,* 05901045, 2818/E7 (1990) (Equal Employment Opportunity Commission decision regarding Rehabilitation Act; waiver of future right to reasonable accommodation void). Thus, the "full duty" language in the Settlement Agreement by which the USPS claims either the union or Steffen (or both) waived Steffen's future right to accommodation for a disability is unenforceable.[3]

---

[3] Even if the Court were to entertain the idea that Steffen's alleged waiver of his prospective rights might be enforceable, the Settlement Agreement provision related to Steffen's return to "full duty" without medical restrictions or accommodations is still not enforceable as a matter of law. A settlement agreement is a particular kind of contract, and so contract law governs. *Newkirk v. Village of Steger,* 536 F.3d 771, 774 (7th Cir. 2008). However, in considering issues of waiver, the Seventh Circuit has adopted a federal "totality of the circumstances" test in determining whether a civil rights litigant has voluntarily and knowingly released his claims. *Pierce v. Atchison, Topeka and Santa Fe Ry. Co.,* 65 F.3d 562, 571 (7th Cir. 1995) citing *Alexander v. Gardner-Denver,* 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1022 n. 15, 39 L.Ed.2d 147 (1974) ("In determining the effectiveness of any waiver, a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing."). In examining the totality of the circumstances, a court may examine several factors, as follows:

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

The Seventh Circuit has also noted that this list of factors is illustrative, and the crucial question is whether the party who has allegedly waived his rights has presented enough evidence to indicate that the alleged waiver was not knowing and voluntary. *Howell v. Motorola Inc.* (7th Cir. January 21, 2011), slip op. at 14.

Here, the term "full duty" was ambiguous. Emma Hughes maintained that the term "full duty" as contained in the Settlement Agreement meant that Steffen was to return to work without restrictions or accommodations necessary. JPFF 44. Dr. Buono concurred in that interpretation, stating that "full duty basically means unrestricted duty." JPFF 59. Dr. Buono went on to state that "It is an experiential thing. ... 'Full unrestricted duty' is full duty. ... 'Restricted duty' is the opposite of full duty." PPFF 11; Buono Tr. 33. (Dr. Buono has twelve years experience in occupation medicine. PPFF 12; Buono Tr. 4-7.) However, in its responses to Requests for Admission in this case, the USPS *denied* that the Settlement Agreement required Steffen to return to work without restrictions. PPFF 13; Decl. Lewison Exhibit 32, Responses to Requests 28-34.

4

## B. THE REHABILITATION ACT SHOULD BE INTERPRETED IN LIGHT OF THE 2008 AMENDMENTS TO THE ACT AND TO THE AMERICANS WITH DISABILITIES ACT.

As noted by the USPS, the Rehabilitation Act and the Americans with Disabilities Act were amended in 2008, with the amendments to become effective on January 1, 2009. USPS Brf. at 20. The USPS then states that because Steffen was terminated prior to January 1, 2009, the amendments are not applicable to this case.

While it is true that the actual language of the amended statute does not apply to Steffen's discharge, courts have examined the reasoning behind the amendments to the Acts to inform their decisions in cases where the adverse action occurred prior to January 1, 2009. See *Rohr v. Salt River Project Agricultural Improvement & Power Dist.,* 555 F.3d 850, 861-862 (9th Cir. 2009).[4] The *Rohr* Court notes that the Amendments were passed "'[t]o *restore* the intent and protections of the Americans with Disabilities Act of 1990.'" Id. at 850, citing to Pub. L. No. 110-325, 122 Stat. 3553 (2008) (emphasis added). The Court also noted that the Amendments expressly rejected

> the Supreme Court's interpretation of the term "disability" in Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), and thereby expands the class of individuals who are entitled to protection under the ADA. Id. § 2(b), 122 Stat. at 3553.

*Id.*

---

Steffen, by contrast, believed that the term "full duty" meant that he would return to his position at the USPS performing the job the way he had prior to his re-injury, and within his medical restrictions. JPFF 39, 40. Steffen's union representative, Dave Stenson, concurred with Steffen and testified at the arbitration over Steffen's discharge that the Settlement Agreement was intended to return Steffen to his former light duty position. PPFF 14; Warwick Decl. Ex. 25, p. 5; Steffen Tr. 147-148.

Where there are three divergent views as to the meaning of an agreement, this indicates that the language of the agreement lacks the level of clarity for a party to enter into the agreement knowingly and voluntarily.

[4] To the extent that prospective, equitable relief is available to remedy Steffen's claims, the amendments do apply. See *Jenkins v. National Board of Medical Examiners,* 2009 WL 331638 (6th Cir. 2009). An order of reinstatement would be equitable and would take place after the effective date of the 2008 Act, which overruled *Toyota*.

5

Indeed, because the Amendments Act simply clarifies misinterpretations of the ADA, a court may well consult the Amendments. See *Green v. American University,* 647 F. Supp. 2d 21, 29-30 (D.D.C. 2009).

Congress paid special attention to the language of the Amendments related to whether someone was "regarded as" disabled under the law. The Amendments provide that an individual is "regarded as" having a disability if the individual is subjected to a prohibited act based on an actual or perceived physical impairment, whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. §12102(3)(A), as amended. In other words, there is no requirement that the impairment be limiting in any way. Admittedly, the Amendments state that a "regarded as" disability will not support a failure-to-accommodate claim; Congress believed that individuals who actually needed accommodations would now be able to get those accommodations under the expanded protections of the law. Compare 42 U.S.C. §12201(h) and Managers Statement, 154 Cong. Rec. at S8842; Statement of Rep. Miller, 154 Cong. Rec. at E1841. However, the Amendments related to the "regarded as" analysis will support a claim involving other conduct that violates the ADA, such as the "100% healed" requirement at issue here.

As noted above, Congress's purpose in passing the Amendments was to *restore* the protections of individuals with disabilities and to correct the misinterpretations of the Rehab Act and the ADA that led to less protection than Congress intended. And, while the Amendments themselves are not controlling, the Amendments specifically denounce *Sutton* and *Toyota,* and thus all of the cases which rely on the reasoning of those cases. Reasoning which cites to *Sutton* or *Toyota* or their progeny seems unsound when Congress has clearly and specifically stated that these cases misinterpret the statutes.

6

Indeed, the purpose for some of the Amendments is to emphasize that the proper focus of the inquiry should be on whether someone has been subjected to discrimination on the basis of disability, and "not unduly focused on the preliminary question of whether a particular person is a 'person with a disability.'" Managers Statement, 154 Cong. Rec. at S8843. In other words, it is the employer's *intent* that should be the focus of the inquiry, not whether the employee is or is not sick enough to be protected under the Act.

### C. STEFFEN WAS (AND IS) AN INDIVIDUAL WITH A DISABILITY.

Courts may look to the Americans with Disability Act (ADA) to interpret the Rehabilitation Act. *Peters v. City of Mauston,* 311 F.3d 835, 842 (7th Cir. 2002). As noted by the USPS, one of the elements of proof which Steffen must provide is that he falls within the ADA's statutory definition of "disabled." USPS Brf. at 21. The parties have agreed that, in this case, Steffen will base his claim that he is disabled on the third prong of the ADA's definition: he was regarded as a person with a disability.

On this point, there is direct evidence: at the time she negotiated and drafted the Pre-Arbitration Settlement Agreement that ultimately resulted in Steffen's discharge, Emma Hughes, the management official who implemented Steffen's removal from employment with the USPS, believed that Steffen had been receiving accommodations for a disability that he had acquired through an off-the-job injury. JPFF 75; Hughes Tr. 14. Emma Hughes regarded Steffen as an individual with a disability. Furthermore, she was the person who determined that if, and only if, he could return *without* accommodations, would the USPS be willing to allow him to return to work. PPFF 3; Hughes Tr. 9.

This is all that is required. Steffen is not required to provide medical evidence that he actually has a disability in order to be considered disabled under the "regarded as" prong of the

Act.  Indeed, he is not required to provide medical evidence in order to show that he is disabled in order to prove disability in any event.  *EEOC v. AutoZone, Inc.,* (7th Cir. 2010, 12/30/10). Hughes believed that Steffen was disabled, and drafted language that she knew would exclude him from employment if he needed accommodations, contrary to the requirements of law; as the Defendant's agent, it is Hughes's intent and her motives that are at issue.  See *Primmer v. CBS Studios, Inc.,* 667 F.Supp.2d 248, 257 (S.D.N.Y. 2009).  The direct evidence shows that Hughes intended to exclude him from employment at the USPS if he was disabled and needed accommodations – which she knew him to be.  Such flagrant disregard for an employer's obligations under the Rehabilitation Act cannot be supported; Steffen requests that the Court find that the USPS is liable for its discriminatory acts against Steffen.

## IV. USPS'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE.

In the event that the court fails to grant Steffen's motion for partial summary judgment, the court must nevertheless deny the motion for summary judgment by USPS because, at that point, there would still be material facts in dispute.

### A. SUMMARY JUDGMENT PRINCIPLES.

Summary judgment in favor of the USPS is not appropriate for this case.  The Seventh Circuit has stated the burdens at summary judgment as follows:

> In order to uphold a grant of summary judgment, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion," *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir. 1990), and conclude there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *First Wisconsin Trust Co. v. Schroud,* 916 F.2d 394, 398 (7th Cir. 1990). Summary judgment is only appropriate when the record reveals that no reasonable jury could find for the nonmoving party. *Doe v. Allied-Signal, Inc.,* 925 F.2d 1007, 1008 (7th Cir. 1991).

8

*Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir. 1991). The *Karazanos* court goes on to say that "the workload crisis of the federal courts, and realization that Title VII is occasionally…used by plaintiffs as a substitute for principles of job protection that do not yet exist in American law, have led the courts to take a critical look at efforts to withstand defendants' motions for summary judgment." *Id.*

However, courts have developed exacting standards for summary judgment in favor of defendants in employment discrimination cases. Seventh Circuit decisions have stated that "[i]n an employment discrimination suit, where credibility and intent are pivotal issues, [summary judgment] standards apply with added rigor." *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994). The court explains the "added rigor" language as follows:

> We first used the phrase "added rigor" in *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368 (7th Cir. 1992), explaining that the summary judgment standard "is applied with added rigor in employment discrimination cases, where intent is inevitably the central issue." *Id.* at 370-71. In support of this proposition, we cited *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985) ("Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles.'") (quoting *Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180, 185 (8th Cir. 1976)), and *Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 660 (7th Cir. 1991) ("Caution is required in granting summary judgment, especially under a statute that allows for trial by jury, as the age discrimination law does.").

*Alexander v. Wis. Dep't of Health & Family Servs.,* 263 F.3d 673 (7th Cir. 2001) (The court has cited to the "added rigor" standard at least 30 times. *Id.* at n.2). Therefore the Court must be particularly suspicious of summary judgment motions in employment discrimination cases, as summary judgment is not appropriate where intent, good faith, and subjective feelings are at issue.

**B. THE COURT MAY NOT MAKE CREDIBILITY DETERMINATIONS AT THE SUMMARY JUDGMENT STAGE.**

9

The Seventh Circuit has also noted that credibility determinations at the summary judgment stage constitute error. *Morfin v. City of E. Chicago*, 349 F.3d 989 (7th Cir. 2003), *citing Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder"); *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987) ("Credibility normally cannot be determined by summary judgment"). *See also Payne v. Milwaukee County,* 146 F.3d 430, 432 (7th Cir. 1998) (Grant of summary judgment partially reversed because "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict"), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

The Seventh Circuit has further stated "summary judgment cannot be used to resolve swearing contests between litigants." *Weeks v. Samsung Heavy Indus.,* 126 F.3d 926, 933 (7th Cir.l997); *Giannopoulos v. Brach &Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir.1997); *Wohl v. Spectrum Mfg.,* 94 F.3d 353, 358 (7th Cir.1996); *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir.1992). It is generally improper for a court to grant a motion for summary judgment based on dueling affidavits. *See Cooper Cameron Corp. v. Dept. of Labor,* 280 F.3d 539, 550 (5th Cir. 2002), which also notes "[t]he government cannot meet its burden with an internally inconsistent, self contradictory affidavit." While many of the cases on the issue refer to self-serving affidavits by the non-moving party, the same rules must apply to the moving party.

10

### C. THE USPS REGARDED STEFFEN AS DISABLED.

The USPS relies on the motives and opinions of Supervisor Charles Spahn to support its claim that the USPS did not regard Steffen as disabled. USPS Brf. at 23-25. However, Spahn's motives and opinions are irrelevant, as he is not the person who implemented Steffen's removal from service: Emma Hughes had that role. JPFF 75. While it is true that Spahn initially issued a Notice of Removal to Steffen, that notice of removal was not effective, as the union grieved the Removal and Hughes put Steffen in Leave Without Pay status, and the USPS did not go through with the removal until January 2006. See PPFF 4; Hughes Tr. 10-11, Exhibit 31, 33. Most tellingly, the reason given for Steffen's removal on the Notice of Personnel Action was that he was terminated for failure to comply with the Settlement Agreement. PPFF 5; Exhibit 33.

Furthermore, *after* Steffen was provided with the first notice of removal signed by Spahn on January 3, 2005 (JPFF 26), and *after* Steffen failed to comply with the Pre-Arbitration Settlement Agreement by having his physician certify that he could return to work without restrictions because his restrictions were actually permanent (JPFF 56, 57), and *after* Dr. Buono determined on December 7, 2005 that Steffen was unfit for duty pursuant to the terms of the settlement agreement (JPFF 58, 59), on or about December 15, 2005, Charles Spahn approved an offer to Steffen for a limited duty assignment which would have allowed Steffen to perform the work he had performed prior to his departure on leave in May 2003 and was within Steffen's long-standing and permanent restrictions. PPFF 6; Decl. Lewison Exhibit 30; Steffen Aff. ¶ 5.

The terms of the offer from the USPS constitute an acknowledgement by the USPS that Steffen was qualified for a position as a mail handler, although he needed accommodations for

11

his medical restrictions in order to perform his job.[5] Spahn testified that he issued this based on instructions, probably from Hughes, but in any case from Labor Relations, and it was probably related to the Settlement Agreement at issue in this case. PPFF 9; Spahn Tr. 54-58.

Nevertheless, Emma Hughes implemented Steffen's removal, she believed that Steffen was disabled, and it is her intent and her motives that are at issue. See *Primmer v. CBS Studios, Inc.,* 667 F.Supp.2d 248, 257 (S.D.N.Y. 2009). The USPS claims that there is *no* evidence in this case from which one could conclude that "Hughes had knowledge that would lead her to regard the Plaintiff as having a disability that substantially limited a major life activity." USPS Brf. at 29 (emphasis added). Surely that is untrue or, at a minimum, a disputed issue of fact. Hughes herself stated that she believed that Steffen had a disability (JPFF 75; Hughes Tr. 14), and a reasonable jury could choose to believe her.

Furthermore, to the extent that the USPS is relying on whether Hughes believed that Steffen had a disability that *substantially limited a major life activity,* reliance on the language in light of *Toyota* and *Sutton* for proper interpretations of that phrase are misplaced. However, this is precisely what the USPS encourages the court to do, by claiming that because Hughes had limited knowledge about Steffen's medical condition that her knowledge *could not* lead her to the conclusion that Steffen had a physical impairment that "substantially limited a major life activity." USPS Brf. at 21-22, 29.

The USPS cites to *Squibb v. Memorial Medical Center* for the principle that "If the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." However, *Squibb* relies on *Kampmier v. Emeritus Corporation,* 472 F.3d

---

[5] Although this offer was apparently written on or about December 15, 2005, it was not provided to Steffen until it was received during the course of the litigation in federal court. PPFF 7; Steffen Aff. ¶ 1-2. If he had been provided the offer on or about December 15, 2005, he would have accepted it. PPFF 8; Steffen Aff. ¶ 4-5.

12

930, 938 (7th Cir. 2007) for this principle, which relies on *Mack v. Great Dane Trailers,* 308 F.3d 776, 781-782 (7th Cir. 2002), which relies heavily on *Toyota* and, to a lesser extent, on *Sutton*. In other words, the cases are not good law, having been reversed by Congress. The USPS and this court should not rely on bad law.

Instead, the court should look to Congress's intent when it originally passed the Rehabilitation Act (and the Americans with Disabilities Act), which intent has been reinstated with the Amendments, and construe the Act "in favor of broad coverage of individuals under this Act." PL 110-325, § 4(A). The court should look at Hughes's *intent*, just as it would in any other employment discrimination case, not to tortured analyses of whether an employee is protected by a particular law.[6] This is particularly true where the plaintiff seeks equitable relief, including reinstatement, and a declaratory order that the USPS may no longer apply a "100% healed" requirement.

However, in order to assess intent, as well as Hughes's credibility in stating what she knew or did not know about Steffen's condition, the Court must engage in weighing evidence in a manner the Seventh Circuit has stated is inappropriate at summary judgment.

### D. THE USPS HAS NOT PROVIDED A LEGITIMATE, NON-DISCRIMINATORY REASON FOR THE DISCHARGE.

In this case, the USPS maintains that it discharged Steffen because he could not comply with the Settlement Agreement, which required that he could only come back to work for the USPS if he could do so without medical restrictions. As noted above, this reason is improper and disallowed under the law. As such, it cannot be considered a *legitimate* reason for

---

[6] Trying to imagine any other anti-discrimination law which would or could be so badly misconstrued and misinterpreted is difficult. One cannot, for example, imagine a defendant claiming that, where an employee makes a claim that she had been discriminated against based on her race or sex that the law does not apply because she does not have a race or sex, despite the fact that the employer believes she has a race or sex.

13

discharge. Nor can it be considered non-discriminatory, since the purpose behind the prohibitions against "100% healed" policies is that such policies tend to exclude from employment individuals who have disabilities, and also prevents them from acquiring accommodations to which they are entitled.

The USPS also relies on the reasoning and actions of Charles Spahn, but as noted above, that was not the reason for the discharge. Spahn's investigation into Steffen's attendance initiated the process for Steffen's discharge, but even the USPS has objected to the introduction of this evidence by stating that *anything prior to the Settlement Agreement was irrelevant.* PPFF 10; Spahn Tr. 66. As noted above, the official Notification of Personnel Action dated January 18, 2006, indicated that "Employee terminated for failure to comply with settlement agreement dated September 30, 2005," (PPFF 4; Exhibit 33); it does not indicate that his discharge had anything to do with attendance issues.

Moreover, the USPS's failure to produce a legitimate, non-discriminatory reason for the discharge is itself evidence that it engaged in illegal actions, as the burden of production in an employment discrimination case is not a burden of proof; a defendant must merely *articulate* a non-discriminatory reason for its actions, and the USPS cannot do so here. Because the USPS cannot produce a non-discriminatory reason for the discharge, summary judgment should be denied.

## V. STEFFEN'S PATTERN AND PRACTICE CLAIM.

The purpose of pleading this claim was to preserve Steffen's right to pursue this matter should the evidence support it. While proof of such an across-the-board practice has not been established, it is worth noting that a claim on behalf of disabled USPS employees has been certified as a class in *McConnell v. U.S. Postal Service,* EEOC Case No. 520-2008-00053X,

14

based on the USPS's National Reassessment Plan, which has been used to systematically move disabled USPS employees off the USPS payroll. For more information, go to http://www.nrpclassaction.com/. Furthermore, as noted above the federal government has certainly attempted, in at least one case, to have an employee waive his future right to accommodation. See *Bell v. Secretary of Agriculture,* 05901045, 2818/E7 (1990). To the extent that the USPS has engaged in such a practice applicable to Steffen, it should be advised to cease and desist from such practices in the future and from relying on any *per se* violation regarding Steffen to justify its termination of his employment or affecting his employment in the future.

## VI. THIS IS NOT A COLLECTIVE BARGAINING AGREEMENT CASE.

To the extent that the USPS has tried to construe Steffen's allegations as a failure by the USPS to live up to the terms of the Settlement Agreement, the USPS's attempt must fail. While standard contract law does apply in the context of a Settlement Agreement (see footnote 3, above), that does not mean that the Rehabilitation Act is pre-empted by federal labor law. See, e.g., *Hendricks-Robinson, et al. v. Excel Corporation,* 154 F.3d 685, 699 (7th Cir. 1998) (general "physical fitness" standards prohibited under the ADA, even in light of language incorporated into collective bargaining agreement). See also *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (civil rights cannot be bargained away in a collective bargaining agreement, and individuals retain their right to bring their own causes of action).

15

## CONCLUSION

For all the foregoing reasons, Plaintiff Craig Steffen asks the Court to grant his motion for partial summary judgment and deny Defendant USPS's motion for summary judgment.

Date:   February 7, 2011

s/ Brenda Lewison

Attorney Brenda Lewison
SBN:   1025079

Law Office of Arthur Heitzer
633 W. Wisconsin Ave., Suite 1410
Milwaukee, WI  53203-1918
(414) 273-1040 x 14
(414) 273-4859 FAX
lewisonlaw@yahoo.com

ATTORNEY FOR THE PLAINTIFF