UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CRAIG M. STEFFEN,

                    Plaintiff,

        v.                                            Case No. 09-C-0120

PATRICK R. DONAHOE, Postmaster General,
United States Postal Service, Agency,

                      Defendant.

---

**DEFENDANT'S CONSOLIDATED REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

The Defendant, Patrick R. Donahoe, Postmaster General,[1] United States Postal Service ("USPS"), by his attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Lisa T. Warwick, Assistant United States Attorney for said district, hereby files his consolidated Reply in support of his Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and his Response in Opposition to Plaintiff's Motion for Partial Summary Judgment. In support of this consolidated Response and Reply, Defendant files Additional Proposed Findings of Fact, Defendant's Objections to Plaintiff's Proposed Findings of Fact and relies upon the previously filed Parties' Joint Proposed Findings of Fact.

---

[1] Effective December 6, 2010, Patrick R. Donahoe became the Postmaster General of the United States Postal Service and replaced retired Postmaster General John E. Potter. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Postmaster Donahoe is automatically substituted for John E. Potter.

There remain no genuine issues as to any material facts and the Defendant is entitled to judgment as a matter of law. [2]

**ARGUMENT**

**A.     The ADA Amendments Are Not Retroactive.**

Plaintiff was employed by the USPS and as set forth in Defendant's opening brief, Plaintiff's disability discrimination claim is governed by the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794(a).  The Rehab Act prohibits discrimination against a "qualified individual with a disability ... solely by reason of her or his disability . . . ." 29 U.S.C. § 794(a) (2007).  Pursuant to the Rehab Act, Federal Agencies are also required to accommodate disabled employees. 29 U.S.C. § 791(b) (2007).

"The Rehab Act defines an 'individual with a disability' as one who: 1) has a physical or mental impairment that substantially limits one or more major life activities; 2) has a record of such an impairment; or 3) is regarded as having such an impairment by the person's employer." *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002); 29 U.S.C. § 705(20)(B) (2002).  The Seventh Circuit Court of Appeals has looked "to the standards applied under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111 *et seq.*, to determine whether a violation of the Rehab Act occurs in the employment context." *Peters*, 311 F.3d at 842; 29 U.S.C. § 794(d) (2007).

In 2008, Congress amended the Rehab Act and the ADA.  42 U.S.C. § 12101, *et seq.* (2009); 29 U.S.C. § 705 (2009).  Because the plaintiff was terminated prior to January 1, 2009, the effective date of the amendments, the amendments are not applicable to this case.

---

[2]The Defendant files this Reply in support of his motion for summary judgment, but does not file a response to the Plaintiff's Objections to Defendant's Proposed Findings of Fact as Civil L. R. 56 does not provide for such a response.  The Defendant notes that the Plaintiff's objections are primarily on the basis of relevance and other evidentiary objections rather than a dispute of the fact itself.  *See* Docket No. 40.

2

"To establish a *prima facie* case under the Rehabilitation Act, [plaintiff] must prove that she (1) falls within the ADA's statutory definition of 'disabled,' meaning that she has a 'physical or mental impairment that substantially limits a major life activity, a record of such impairment, or [is] regarded as having such impairment,' *see* 42 U.S.C. § 12102(2); (2) is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) has suffered an adverse employment decision because of the disability." *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008); *Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006).

Major life activities include self-care, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. §§ 1630.2(I); *see Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). "Not all individuals having what might commonly be perceived as physical or mental disabilities are protected by the Act." *Desmond v. Mukasey*, 530 F.3d 944, 952 (D.C. Cir. 2008).

In his responsive brief, Plaintiff asserts that in light of the amendments, cases which pre-date the amendments and interpret the meaning of "substantially limits a major life activity" are no longer "good law," but are "bad law." Docket No. 36, pp. 12-13. Plaintiff asks this Court to "look to Congress' intent when it originally passed the Rehabilitation Act (and the American with Disabilities Act), which intent has been reinstated with the Amendments . . . ." *Id*.

The ADA Amendments expanded the ADA's definition of "disability," but the amendments are not retroactive and thus do not apply to Steffen's case. *See Fredricksen v. United Parcel Service,* 581 F.3d 516, 521 n. 1 (7th Cir. 2009) ("Congress did not express its intent for these changes to apply retroactively, and so we look to the law in place prior to the amendments); *Kimble v. Potter,* 2010 WL 3245763, * 2, n. 2 (N.D. Ill. August 17, 2010) (the amendments to the ADA are not

3

Case 2:09-cv-00120-AEG   Filed 02/28/11   Page 3 of 15   Document 43

retroactive and do not apply to the plaintiff's case) (attached hereto as Exhibit 1). The Court in *Fredricksen* not only looked to the law in effect prior to the amendments, but also appropriately relied upon case law decided prior to the amendments including *Squibb v. Memorial Med. Ctr.,* 497 F.3d 775 (7th Cir. 2007), which Plaintiff characterizes as "bad law."

Plaintiff's claim of being regarded as disabled is appropriately analyzed under the ADA prior to the amendments and in light of the reasoning of cases interpreting that law. The law in effect during the time in which Plaintiff's alleged discrimination occurred and thus applicable to his case, includes that a defendant must have regarded a plaintiff's impairment as substantially limiting a major life activity. *Squibb,* 497 F.3d at 786. If the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute. *Id.*

**B. The Undisputed Material Facts Demonstrate That the Deciding Official Did Not Regard Plaintiff as Having a Disability That Substantially Limited a Major Life Activity.**

There is no evidence in this record to support a finding that the deciding official, Emma Hughes, regarded the Plaintiff as having a disability that substantially limited a major life activity. To establish a *prima facie* case under the Rehabilitation Act, Plaintiff must prove more than just Emma Hughes regarded him as having a disability. Plaintiff must prove that Emma Hughes regarded him as having a disability that substantially limited a major life activity. *Garg*, 521 F.3d at 736. Major life activities include self-care, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. §§ 1630.2(I); *see Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). Although to date Plaintiff has failed to specify and assert which major life activity was substantially affected by his perceived disability, Plaintiff

4

alleged in his Second Amended Complaint that his back condition "severely affected his major life activities of engaging in certain motor skills, including repetitive bending, stooping, climbing, reaching and twisting."  Docket No. 27, ¶'s 11 , 12.

There is no evidence in this record to support a finding that Ms. Hughes regarded Plaintiff as having a disability that substantially limited his major life activities of engaging in certain motor skills such as repetitive bending, stooping, climbing, reaching and twisting.  Rather, the record supports a finding that Emma Hughes had limited knowledge of Plaintiff's medical condition.  The undisputed material facts are that Ms. Hughes understood that Plaintiff had sustained a back injury, though she did not know the extent of the situation nor the seriousness of the injury, and that Ms. Hughes did not know how Plaintiff's back condition affected his ability to perform his job.  JPFF 48, 49.

In his responsive brief, Plaintiff asserts that Ms. Hughes herself states that she believed that Steffen had a disability and cites as support Joint Proposed Finding of Fact No. 75 and Ms. Hughes' deposition transcript. Joint Proposed Finding of Fact No. 75 relates to the reasons that led USPS management to determine that the Plaintiff had not complied with the terms of the Pre-Arbitration Settlement Agreement; one of the reasons being that Plaintiff had failed to apply for disability retirement.  JPFF 75.  This Joint Proposed Finding of Fact does not support the assertion that Ms. Hughes regarded Plaintiff as having a disability, but instead details the terms of the Pre-Arbitration Settlement Agreement and Plaintiff's failure to abide by its terms.  Nor does Ms. Hughes' deposition transcript provide sufficient support for the assertion that Ms. Hughes regarded the Plaintiff as

5

disabled.[3] In response to a question at her deposition, Ms. Hughes stated that she believed Plaintiff was receiving accommodations for a disability that he acquired through an off-the-job injury. Defendant's Additional Proposed Findings of Fact ("APFF") 1. Ms. Hughes does not state that she believed Plaintiff was disabled or more importantly, that she regarded Plaintiff as having a disability that substantially limited a major life activity. *Id.*

Plaintiff attempts to support a finding that the Defendant regarded the Plaintiff as having a disability by referring this Court to an Offer of Modified Assignment. Plaintiff's Proposed Finding of Facts 6, 7; Lewison Declaration, Exhibit 30. The document dated December 15, 2005, is signed by Charles Spahn, appears to offer Mr. Steffen a modified assignment within the USPS to work within his medical restrictions and bears a date-stamp of December 20, 2005, from the U.S. Postal Service Injury Compensation. *Id.* Not only is this document not material to the issue of whether the Defendant regarded the Plaintiff as having a disability that substantially limited a major life activity, there is not enough known about the Offer of Modified Assignment such as why it was drafted, for whom or for which USPS department it was drafted, or why the document was not presented to the Plaintiff, for this Court to arrive at an undisputed finding of fact.

Charles Spahn had, at best, a spotty recollection of authoring this document and testified at his deposition that he probably issued the Offer of Modified Assignment on instructions from Emma Hughes and that it was probably related to the Pre-Arbitration Settlement Agreement. Plaintiff's Proposed Findings of Fact 9. Yet, Ms. Hughes testified that she did not recall instructing Mr. Spahn

---

[3]By citing directly to Ms. Hughes' transcript, Plaintiff has failed to comply with Civil Local Rule 56(b)(6) which states that assertions of fact in a party's supporting memorandum must refer to the corresponding numbered paragraph of the statement of facts, statement of additional facts, or statement of stipulated facts. Plaintiff filed Proposed Findings of Fact, but does not offer a proposed finding that Ms. Hughes believed he had a disability.

to draft the document, had not seen the document until litigation commenced in this case, had no idea why the document would be created and confirmed that the document would not have been in compliance with the terms of the Pre-Arbitration Settlement Agreement. APFF 2. Ms. Hughes also noted the date-stamp from U.S. Postal Service Injury Compensation unit on the document, explained that the injury compensation unit dealt with employees who had restrictions due to on or off-the-job injuries, and the injury compensation unit would handle USPS employee notifications asserting an on-the-job injury. APFF 3. Further, prior to this document being signed on December 15, 2005, by Charles Spahn, the Plaintiff, on September 30, 2005, filed a Notice of Occupational Disease claiming a back condition as a result of his federal job duties. Defendant's Proposed Findings of Fact 30, 31.

The Court may view this document not as support for a finding that the Defendant viewed Plaintiff as having a disability that substantially limited a major life activity, but instead as simply a document having some bearing on Plaintiff's September 30, 2005 Notice of Occupational Disease claiming a back condition as a result of his federal job duties.

Based on the record in this case and upon the undisputed material facts, the Defendant did not regard the Plaintiff as having a disability that substantially limited a major life activity or mistakenly believed he had such a type of impairment. Plaintiff was not a protected individual under the Rehabilitation Act. Partial Summary Judgment for the Plaintiff should be denied and Summary Judgment in favor of the Defendant should be granted.

    **C.    The Defendant Has Provided a Legitimate, Non-Discriminatory Reason for Plaintiff's Discharge from the USPS.**

USPS Labor Relations Specialist Emma Hughes explained that the Plaintiff was terminated from the USPS due to his non-compliance with the terms of the Pre-Arbitration Settlement

7

Case 2:09-cv-00120-AEG   Filed 02/28/11   Page 7 of 15   Document 43

Agreement. JPFF 75, 76. Plaintiff argues that this reason for his discharge is improper, disallowed under the law and thus cannot be a legitimate non-discriminatory reason. Docket No. 36, p. 13-14. Plaintiff premises this argument upon his claim that the Pre-Arbitration Agreement should be viewed as evidence of a "100% healed" policy. *Id*. at 14. However, as argued herein, Plaintiff lacks the requisite standing to pursue this *per se* violation claim and has offered no evidence of such a policy at the USPS. As such, Defendant has appropriately produced a legitimate, non-discriminatory reason for Plaintiff's discharge.

When issuing the Notices of Removal, Plaintiff's supervisor, Charles Spahn, relied upon attendance records and the labor relations specialist, Emma Hughes, relied upon the Pre-Arbitration Settlement Agreement, the Form 2485 "Medical Examination & Assessment" stating that Steffen was unfit for duty and information from a human resources associate confirming that Steffen had not applied for disability retirement benefits. Defendant's PFF 17; JPFF 75, 76.

Plaintiff's initial Notice of Removal informed him that he was being removed due to his AWOL status and due to his failure to follow instructions. JPFF 26. The Plaintiff's six months absence from work and his failure to follow instructions were not pretextual reasons to terminate the Plaintiff's employment.[4]

Similarly, USPS Labor Relations Specialist Emma Hughes explained that Plaintiff was terminated from the USPS due to his non-compliance with the terms of the Pre-Arbitration Settlement Agreement. JPFF 75, 76. Plaintiff's physician did not return him to full duty, he was found "unfit" for return to duty per the terms of the settlement agreement, and he did not apply for

---

[4]While Plaintiff argues that Spahn's motives and opinions are irrelevant, this background is included to provide a context for the negotiation process that followed the initial Notice of Removal and that led to the Pre-Arbitration Settlement Agreement.

8

disability benefits nor did he resign. JPFF 58, 60. Plaintiff's failure to abide by the negotiated terms of the Pre-Arbitration Settlement Agreement was not a pretextual reason to terminate the Plaintiff and the reason for Plaintiff's termination is legitimate and non-discriminatory.

### D. The Defendant is Entitled to Summary Judgment as to the Plaintiff's Pattern or Practice Claim.

In his Second Amended Complaint, Plaintiff alleges that the USPS has a pattern or practice of requiring employees to be "one-hundred-percent cured" in order to return to work unless the employee has been certified as having a work-related injury by the Office of Workers Compensation Program. Docket No. 27. Plaintiff alleges that the Defendant discriminated against him when the Defendant applied a pattern or practice in violation of the applicable law and requests that Plaintiff's employing unit and the USPS be enjoined from applying or enforcing any practice requiring non-OWCP employees to be fully able-bodied in order to be employed or reinstated. *Id.*

Despite this allegation, Plaintiff concedes in his brief that "proof of such an across-the-board practice has not been established . . ." Docket No. 36, p. 14. Therefore, the Defendant is entitled to summary judgment as to Plaintiff's pattern or practice claim because Plaintiff has admitted that he has not established any proof to support this claim.

### E. The Plaintiff Lacks Standing to Pursue a Claim of a *Per Se* Violation of the American With Disabilities Act.

Plaintiff requests that this Court award him partial summary judgment on the claim that the Defendant engaged in a *per se* violation of the law. Docket No. 36, p. 2. Specifically, Plaintiff argues that "[a]n employer may not absolve itself of its obligation to provide reasonable accommodations to a returning employee by requiring the employee to be '100% healed'" and that such a requirement is a *per se* violation of the American with Disabilities Act and the Rehabilitation

9

Act. Docket No. 36, p. 3. It appears that Plaintiff is asserting this alleged *per se* violation separate and apart from his pattern or practice claim which claim Plaintiff conceded he has not established.

It is difficult to ascertain precisely what Plaintiff claims to be in violation of the ADA. It is also unclear whether Plaintiff is asserting that the Defendant had a *policy* of requiring a returning employee to be "100% healed" or whether Plaintiff's Pre-Arbitration Settlement Agreement should be viewed as requiring that Plaintiff be "100% healed" prior to returning to work. Regardless of how Plaintiff's claim is framed, the claim fails based on the record in this case and the applicable case law.

First, like the pattern or practice claim, Plaintiff has failed to offer any evidence that the Defendant had a policy that a returning employee must be "100% healed" prior to returning to work. Second, Plaintiff's argument appears to presuppose that he is disabled and would need accommodations to return to work. Yet, Plaintiff has consistently asserted throughout this litigation that he is able to perform the day to day duties of his position without accommodation. APFF 4, 5. Based on this record, there is no evidence of a policy nor that Plaintiff ever requested accommodations prior to returning to work.

Furthermore, Plaintiff lacks standing to pursue this claim of a *per se* violation of the ADA. To pursue such a claim, Plaintiff must be a person with a disability within the meaning of the ADA. *Contreras v. Suncast Corporation,* 237 F.3d 756, 765-766 (7th Cir. 2001) (plaintiff was not a qualified individual with a disability and thus did not have Article III standing to challenge defendant's accommodations policy as facially invalid); *Stuckey v. City of Naperville,* 1998 WL 173298 at *4 (N.D. Ill April 7, 1998) ("Stuckey focuses his attention on a claim that the City's disability policy is a '*per se* violation of the ADA' and seemingly ignores the substance of the City's

10

motion. Stuckey inexplicably overlooks the fact that he is without standing to contest the City's policy if he is not a qualified individual with a disability under the ADA. In other words the potential illegality of the City's policy does not automatically allow Stuckey to proceed with his claim under the ADA.") (attached hereto as Exhibit 2); *Hutchinson v. United Parcel Service, Inc.,* 883 F. Supp. 379, 398 (N.D. Iowa 1995) (plaintiff was not a person with a disability within the meaning of the ADA and therefore was not a person who can assert a claim under 42 U.S.C. § 12112(a)).

Plaintiff has failed to offer any evidence to support a *prima facie* case that the Defendant regarded him as having a disability that substantially limited a major life activity. Rather, Plaintiff only argues that the ADA amendments apply to his case and that he need not prove he was regarded as having a disability that substantially limited a major life activity. As such, Plaintiff has failed to establish that he is a person with a disability within the meaning of the ADA.

To the extent that by asserting this *per se* violation of the ADA, the Plaintiff seeks equitable relief, Plaintiff's request fails. Even a person who has suffered a prior injury cannot obtain equitable relief unless there is a showing that there is a real or immediate threat that the person will be wronged again in a similar way. *Id.,* citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983). At present, there is no evidence of a real or immediate threat that the Plaintiff will become a person subject to the alleged "100% healed" requirement and therefore, Plaintiff lacks standing.

Plaintiff's claim of a *per se* violation also suffers from mootness in that a plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being injured by the defendant in the future. *Id.* at 398 n. 8 (a legitimate termination of employment moots a plaintiff's claim for declaratory and/or injunctive relief relating to conditions of the plaintiff's

11

employment and a claim for such relief is moot where the plaintiff was no longer employed by the employer whose policy she sought to enjoin); *see also*, *Contreras,* 237 F.3d at 766 (fact that plaintiff is no longer employed by the defendant means that there is no risk that he will ever suffer an injury as a result of the policy he sought to challenge).

Not only does the Plaintiff lack standing to pursue his *per se* violation claim, Plaintiff's case law citations do not support his claim that requiring that he be "100% healed" prior to returning to work is a *per se* violation of the Rehabilitation Act. In *Hendricks-Robinson, et al. v. Excel Corporation,* 154 F.3d 685 (7th Cir. 1998), the question before the Court was whether Excel's medical layoff policy violated the ADA. *Hendricks-Robinson*, 154 F.3d at 689, 692. The question of whether the plaintiffs were qualified individuals with a disability was not before the Court. *Id.* at 692. Similarly, in *Heise v. Genuine Parts Company,* 900 F. Supp. 1137 (Sept. 5, 1995 D. Minnesota), the defendant did not dispute whether the plaintiff was disabled within the meaning of the ADA. *Heise,* 900 F. Supp. at 1151. Such was also the case in *Hutchinson* where the district court held that the plaintiff, who was found not to be disabled within the meaning of the ADA, lacked standing to pursue an allegation that the company's "100% healed" policy was a *per se* violation of the ADA. *Hutchinson,* 883 F. Supp. at 396. The district court felt compelled to reach the question of standing even though both parties at oral argument appeared to agree that the plaintiff could not pursue her allegations of *per se* violations if she was not disabled. *Id.* at 396, n. 7.

The Plaintiff also argues that the Pre-Arbitration Settlement Agreement should be read to contain a "100% healed" requirement which constituted a prospective waiver of his right to accommodation for his disability and that this requirement is a *per se* violation of the law related to

12

discrimination claims. Docket No. 36, p. 4. Plaintiff asserts that the "full duty" language in the Pre-Arbitration Settlement Agreement is "unenforceable." *Id.*

This claim fails for a number of reasons. First, this *pre se* violation claim again presupposes that Plaintiff is disabled within the meaning of the ADA. As is argued throughout this brief, Plaintiff has failed to establish a *prima facie* case that the Defendant regarded him as having a disability that substantially limited a major life activity or mistakenly believed he had such a type of disability. Second, as already noted herein, Plaintiff has consistently maintained that he did not require an accommodation to perform the day to day duties of his job. APFF 4, 5. The Pre-Arbitration Settlement Agreement states only that "[g]rievant will be returned to duty provided he successfully meets all medical requirements for his position." Defendant's PFF 37. The Pre-Arbitration Settlement Agreement does not speak to the future conditions of the Plaintiff's employment should he return to work..

Third, Plaintiff fails to offer any case law in support of his argument that such a prospective waiver is a *per se* violation of the ADA. Rather, Plaintiff's cited cases pertain to situations wherein a plaintiff pursued a claim of discrimination against an employer and the defendant employer attempted to foreclose that claim by arguing that an employment contract or provisions of a collective bargaining agreement barred the discrimination claim. *See Richardson v. Sugg,* 448 F.3d 1046, 1053-54 (8th Cir. 2006) (plaintiff brought claim of discrimination against employer who argued that contract provision barred such a claim; court held Title VII employment discrimination claims may not be prospectively waived by contract for employment); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51-52 (1974) (plaintiff brought suit for discrimination after having first pursued arbitration under his union's collective bargaining agreement and defendant argued that plaintiff was

13

barred from pursuing discrimination claim under an election-of-remedies argument; Court held that rights conferred by Title VII can form no part of the collective bargaining process; employee's rights under Title VII are not susceptible to waiver).

In essence these line of cases stand for the proposition that an employee who is employed subject to a collective bargaining agreement or pursuant to specific contractual provisions, is not thereby barred from bringing a future Title VII claim of discrimination against his employer nor barred under an election-of-remedies argument and that such prospective waivers are invalid. The cases do not support Plaintiff's argument that such a provision in a settlement agreement is a *per se* violation of the ADA. Rather, the case law supports the proposition that an employee generally cannot prospectively waive his rights under Title VII and that such a waiver would be invalid.

But in this case, the Defendant is not arguing that the terms of the Pre-Arbitration Settlement Agreement are a bar to Plaintiff's discrimination claim. Rather, the Defendant asserts that the undisputed material facts support a finding that the Defendant did not regard the Plaintiff as having a disability that substantially limits a major life activity. Upon both the factual record in this case and the case law, Plaintiff has failed to support his claim that the requirement of meeting the medical requirements for his position as detailed in the Pre-Arbitration Settlement Agreement was a *per se* violation of the ADA.

Based on the evidence in this case and the law as applied to his case, Plaintiff is unable to support a claim against the Defendant asserting a *per se* violation of the ADA. As such, this Court should deny the Plaintiff's request for partial summary judgment on these claims.

14

Case 2:09-cv-00120-AEG   Filed 02/28/11   Page 14 of 15   Document 43

## F. CONCLUSION

Wherefore, the Defendant respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment and that Summary Judgment be granted in favor of the Defendant.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2011.

        JAMES L. SANTELLE
        United States Attorney

By:    /s Lisa T. Warwick

        LISA T. WARWICK
        Assistant United States Attorney
        State Bar # 1017754
        Attorney for Defendant
        530 Federal Courthouse
        517 E. Wisconsin Avenue
        Milwaukee, WI 53202
        Telephone: (414) 297-1700
        Fax: (414) 297- 4394
        E-mail: lisa.warwick@usdoj.gov

Agency Counsel:
Isabelle F. Ferrera
United States Postal Service
Law Department
222 S. Riverside Plaza, Suite 1200
Chicago, IL 60606